## FRANK W. HARVEY
### v.
## CARLOS A. COOK.

*Agency—Action for Commissions for Procuring Advertising Contracts —Burden of Proof—Acceptance—Misconduct of Agent—Fraud—General Issue—Instructions.*

1. An instruction which purports to embrace every element necessary to a recovery, is defective if any material element is omitted.

2. An agent is entitled to his commissions only upon a due and faithful performance of all the duties of his agency.

3. The construction of written contracts is a question of law and can not be submitted to the jury.

4. In an action to recover commissions for procuring certain advertising contracts, it is *held:* That the undertaking of the plaintiff was to procure

contracts of a particular description to be signed by persons of a definite description; that the burden of proof was upon him to show performance; that the reception by the defendants of the papers in question, without inquiry as to the genuineness of the signatures, did not relieve the plaintiff from the burden of proof; that certain instructions were defective; and that the defendant had the right under the general issue to show gross misconduct, fraud, negligence and unskillfulness by the plaintiff in the performance of his duties as agent.

[Opinion filed December 7, 1887.]

Appeal from the Superior Court of Cook County; the Hon. John P. Altgeld, Judge, presiding.

This action was brought by appellee Cook against James M. and Frank Harvey, doing business as clothing merchants under the firm name of Harvey Brothers, to recover commissions upon 362 advertising contracts with the publishers of different newspapers procured by Cook as agent for Harvey Brothers for that special purpose. Before trial James M. Harvey died, and the suit was carried on against the other defendant as surviving partner. Upon trial by jury, a verdict was rendered against defendant for $1,810 damages, and the court requiring the plaintiff to remit $1,000 of that sum, gave judgment for $810 besides costs, from which this appeal was taken by defendant.

Plaintiff proved that procuring advertising was his profession or business and had been for twenty-three years. To show his authority to act for Harvey Brothers, he proved their signatures, and gave in evidence the following:

"Chicago, Oct. 6, 1882.

"In order to secure general newspaper advertising, we hereby authorize C. A. Cook & Co., Chicago, Ill., to make all advertising contracts in our name with the publishers of different newspapers, in accordance with the printed agreement or form for that purpose.

"In consideration of the said C. A. Cook & Co. making such advertising contracts, we hereby agree to pay to C. A. Cook & Co. the sum of five dollars on each $\frac{1}{4}$ or 25 per cent.

contract for each and every contract *signed by the publishers* on the delivery to us of said contracts.

　　　　" Signed,　　　　　　HARVEY BROS.,

　　　　　　　　　　　　" 84 and 86 State St."

The plaintiff testified that the form of the advertising contracts referred to in the above, was the same as one he held in his hand. That he had procured 362 of them and delivered them to defendant, all in the same form but differently signed. The one he held in his hand was then given in evidence, and was as follows:

" ADVERTISING  CONTRACT ⎫
　　　　AND　　　　⎬ *Chicago, October, 1882.*
　　AGREEMENT.　　⎭

" We hereby agree to furnish to the publishers, or order, below named, such clothing as may be ordered on the terms and conditions of the contract hereunder written and printed.

　　　　Signed,　　　　　　HARVEY BROTHERS.

" I hereby agree to publish in the Valparaiso Avalanche, published at Valparaiso, Townlen Co., State of Nebraska, the advertisements of Harvey Bros., Chicago, Ill., as per copies to be furnished at any time, and to be inserted as ordered at our lowest cash rates, to the amount of $50.

" The payment for the said advertising is agreed to be made by Harvey Brothers in *fine clothing*, at their regular cash prices as follows: On all clothing ordered by us under this contract, we are to receive from Harvey Brothers a *discount* of *one-fourth*, or 25 per cent. (excepting during their *special discount* sales) until the amount, $50.00, charged for advertising, is canceled by said discounts.

" ☞ N. B.—This contract is good for $200 in clothing as specified, can be ordered at any time and in lots to suit the holder of this contract.

" We also agree to mail copy of our paper regularly, containing said advertising, to Harvey Brothers, 84 and 86 State Street, Chicago.

　　　　　　　　　Accepted, S. M. WEED.

" Dated, Oct. 28, 1882.

"☞ Please fill up date, sign, and *return this* to C. A. Cook & Co., Chicago."

There was a conflict of testimony as to the above being the form of contract to be adopted, and it was claimed by defendant that after a form had been decided upon the plaintiff caused material alteration of it without defendant's assent thereto.

There was no proof in the case that the signatures of publishers, purporting to be affixed to the alleged 362 advertising contracts, were any of them genuine, or that Harvey Brothers, or either of them, had any knowledge or information as respected the matter. The only evidence relied upon in that behalf was two receipts which Cook had prepared and taken respectively with two batches of contracts, as follows:

"Chicago, Oct. 21, 1882.   Received of C. A. Cook & Co., sixty-six advertising contracts, as per agreement, at $5 each.

"Harvey Brothers."

"Chicago, Oct. 25, 1882.   Received of C. A. Cook & Co., ninety-six advertising contracts, as per agreement, at $5 each.

"Harvey Brothers."

The defendant offered to prove that Cook prepared the form of contract, and that it was made indefinite, and making it so was part of a fraudulent scheme on the part of Cook; also, that Harvey Brothers neither derived any benefit from the said advertising contracts, or any of them, on account of their form. But the court, on objection by plaintiff, excluded the evidence.

The court instructed the jury on behalf of the plaintiff as follows:

"1st. If the jury believe from the evidence that Harvey Brothers on or about October 6, 1882, executed the written document which has been offered in evidence, authorizing the plaintiff to make the advertising contracts therein referred to, and that the plaintiff did afterward, in pursuance of said authority, procure and deliver to said Harvey Brothers a large number of advertising contracts, such as he was by said document authorized to make, then the jury should find the issues for the plaintiff, and in such case the measure of damages will be the contract price agreed upon between the parties for the procuring of such advertising contracts.

"And the jury are instructed that if they believe from the evidence that at the time of the delivery of such contracts to the defendants, no question was made about the genuineness of the signatures to such advertising contracts, and that the defendants accepted said contracts as having been properly signed, or signed by the parties purporting to have signed them, then it was not necessary in the first instance for the plaintiff to introduce evidence on his part as to the genuineness of such signatures."

Mr. HENRY W. MAGEE, for the appellant.

Mr. FREDERIC ULLMAN, for appellee.

McALLISTER, J.   On the trial, the plaintiff below gave evidence tending to show in a general way that he had procured for Harvey Brothers 362 advertising contracts, and claimed that, under the contract with them, dated October 6, 1882, he was entitled to a commission of $5 upon each.   No direct evidence as to the genuineness of the signatures of the purported publishers appearing thereon, was offered; but he produced in evidence a written acknowledgment signed by Harvey Brothers, dated October 21, 1882, of the reception by them from him of sixty-six advertising contracts as per agreement at $5 each; also another dated October 25, 1882, for ninety-six and couched in the same language.

By the first branch of the first instruction given for the plaintiff the jury were directed (after a reference to said contract of October 6, 1882, authorizing the plaintiff to make the advertising contracts therein referred to) that if the plaintiff, afterward, in pursuance of said authority, procured and delivered to Harvey Brothers a *large number* of advertising contracts, *such as he was by said document authorized to make,* then the jury should find the issues for the plaintiff, and in such case the measure of damages will be the contract price agreed upon between the parties for the procuring of such advertising contracts.   That instruction purports to embrace every element necessary to a recovery.

The contract of October 6, 1882, contains this stipulation : " In consideration of the said C. A. Cook & Co. making such advertising contracts, we hereby agree to pay to C. A. Cook & Co. the sum of $5 on each $\frac{1}{4}$ or 25 per cent. contract for each and every contract *signed by the publishers*, on the delivery to us of said contracts." In looking at the whole instrument, it will be perceived that aside from the advertising contract being signed by the publishers, they were to be in accordance with a printed agreement or form for that purpose.

The generally accepted rules as to an agent's right to commissions, are stated in Story on Ag., Sec. 331: "The agent is entitled to his commissions only upon a due and faithful performance of all the duties of his agency in regard to his principal. For it is a necessary element in all such cases, that, as the commissions are allowed for particular services to the principal, it is a condition precedent to the title to the commissions that the contemplated services should be fully and faithfully performed." Hoyt v. Shipherd, 70 Ill. 309.

The above instruction contains no hypothesis as respects the genuineness of signatures or of the fact of the persons purporting to have signed being in reality publishers of newspapers; and it avoids doing so by the substitution of the hypothesis that the advertising contracts were "such as he was by said document authorized to make." What was that but the submission of a question of law to the jury ? It is manifest that the jury could determine the point thus submitted only by construction of the original written contract and of the several advertising contracts. The construction of written instruments is always a question of law.

By the second branch of the same instruction, or more properly, the second instruction for plaintiff, the court directed the jury that if, at the time of the delivery of such contracts to the defendants, no question was made about the genuineness of the signatures to such advertising contracts, and the defendants accepted said contracts as having been properly signed, or signed by the parties purporting to have signed them, then it was not necessary in the first instance for the plaintiff to introduce evidence on his part of the genuineness of such signatures.

The hypothesis embraced does not include the matter of the persons who purported to have signed, being, in fact, publishers of newspapers. The undertaking of the plaintiff was to procure for defendants advertising contracts of a particular description to be signed respectively by persons of a definite description.

The performance of that undertaking by the plaintiff was a condition precedent to his right of recovery, and the burden of proof was upon him to show such performance, or that the defendants, by some act, had lawfully discharged him therefrom. The reception by the defendants of the papers in question of plaintiff, without any question on the part of the former as to the genuineness of signatures, could have no effect to relieve the plaintiff from the burden of proof, because the law imposed no duty upon the defendants to make such question or inquiry at that time. The law gave them such time thereafter as would, under all the circumstances, be reasonable, in which to ascertain those matters. Take, for instance, the case of a delivery under an executory contract of sale of goods of a particular quality or description, or under a sale by sample, the buyer is not bound to make inquiry at the time of delivery, but has such time thereafter as is reasonable under all circumstances in which to ascertain the true quality or description of the goods delivered. So that in order to discharge the plaintiff from performance or relieve him from the burden of proof it was necessary that something more should have been embraced in the instruction. It should have contained the hypothesis that the defendant received the papers with the intention of waiving all inquiry respecting the genuineness of signatures, or that the reception of them on their part was with the intention to retain them as in full compliance with and satisfactory fulfillment of the original contract. And such intention must have been manifested in a way to be capable of proof.

The instructions referred to were erroneous and misleading for the reasons stated.

We are of opinion that the defendant had the right under the general issue to show gross misconduct, fraud, neg-

ligence and unskillfulness on the part of plaintiff in the performance of his duties as agent, and thus defeat his right to compensation. Denew v. Deverell, 3 Camp. 451; Dodge v. Tielson, 12 Pick. 328; Fisher v. Dynes, 62 Ind. 348; Prescott v. White, 18 Ill. App. 322.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*